UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00431-GNS-CHL

JAMAJ JOHNSON                                                                                    PLAINTIFF

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 4). This matter is ripe for adjudication. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.      BACKGROUND

On June 24, 2018, Plaintiff Janna Jefferson ("Jefferson") alleges that an unmarked police cruiser, which was driven by Defendant Officer Kelly Hanna ("Hanna") of the Louisville Metro Police Department ("LMPD"), initiated a traffic stop of his vehicle in Louisville, Kentucky. (Compl. ¶¶ 11-20). As Jefferson's vehicle was stopping, another unmarked car pulled in front of his vehicle. While Jefferson contends that he had broken no laws, an unnamed officer approached the passenger side of his vehicle and ordered him to egress. (Comp. ¶¶ 21-24). Jefferson allegedly informed the unnamed officer that he would not consent to the search. (Compl. ¶ 24). The unnamed officer purportedly searched Jefferson's person for contraband, and Jefferson provided his driver's license to Hanna. (Comp. ¶¶ 27-28). According to Jefferson, his license and criminal records search was negative. (Comp. ¶ 28).

1

During the stop, Jefferson's passenger and her baby were removed from the vehicle, and unknown officers searched his vehicle with a police canine. (Comp. ¶¶ 28-33). The canine search did not result in the discovery of any drugs but caused damage to the interior of Johnson's vehicle. (Comp. ¶¶ 33-34). Johnson later discovered that a magazine and ammunition were taken from his vehicle during the search. (Compl. ¶ 42). As a result of the stop and as an alleged justification for the stop, the officers cited Johnson for failing to maintain proper insurance and use a turn signal. (Compl. ¶¶ 40-41). Prior to trial, the charges were dismissed with prejudice by the Jefferson District Court, and Johnson did not stipulate to the existence of probable cause. (Comp. ¶¶ 45-46).

On June 13, 2019, Jefferson filed this action alleging violations of his civil rights under 42 U.S.C. §§ 1981 and 1983, and various state law claims. (Compl. ¶¶ 51-130). In the Complaint, Jefferson asserted claims against, *inter alia*, Louisville-Jefferson County Metro Government ("Louisville") and Chief of Police Steve Conrad ("Conrad"). In the present motion, Louisville Metro and Conrad have moved to dismiss the claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(6). (Defs.' Mot. Dismiss, DN 4).

## II.     JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).

## III.     STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting

"as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In order to survive a Rule 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).

### IV. DISCUSSION

#### A. Immunity Defenses

Before addressing the sufficiency of the allegations asserted in the Complaint, Louisville Metro and Conrad contend that the claims asserted against them are barred by immunity defenses under federal and state law.

##### 1. *Federal Law*

Under federal law, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "Qualified immunity is a defense only to

3

individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011).

To determine whether a defendant is entitled to qualified immunity, a court must consider: (i) whether "based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred"; and (ii) if so, whether "the constitutional right [was] 'clearly established' at the time of violation." *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *8 (W.D. Ky. Nov. 28, 2018) (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194 (2001)). "To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the [Plaintiff's] favor. The Plaintiff bears "the burden of showing that" the Defendants are 'not entitled to qualified immunity.'" *Hoskins v. Knox Cty.*, No. 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018) (citations omitted).

As the Sixth Circuit has recognized, however, it is inappropriate for a court to resolve the applicability of qualified immunity in ruling on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (internal quotation and citations omitted)). At this stage of the litigation, it would be inappropriate for the determine whether any claims are precluded by qualified immunity without affording Johnson the opportunity to conduct discovery. Accordingly, the motion will be denied on this basis.

2. *State Law*

a. **Qualified Immunity**

Conrad seeks dismissal of the state law claims against him based on qualified immunity. "Kentucky provides qualified immunity from tort liability for public officers and employees for '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'" *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). As this Court has noted, "[t]he qualified immunity doctrine essentially holds that officials charged with exercising judgment and discretion should not be held personally liable for damages for fear of discouraging independent action and thereby deterring effective performance of official duties." *New v. Louisville Metro Gov't*, No. 3:15-cv-653-DJH, 2016 WL 1268299, at *4 (W.D. Ky. Mar. 30, 2016) (citing *Hany v. Monsky*, 311 S.W.3d 235, 245 (Ky. 2010)). Notably, Kentucky's qualified immunity standard requires that defendants prove the subjective element of good faith, an element the Supreme Court of the United States rejected from the federal analogue in *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982). *Howell*, 668 F.3d at 355 (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)).

As discussed above, it is inappropriate to resolve the applicability of qualified immunity in ruling on a Rule 12(b)(6) motion. *See Wesley*, 779 F.3d at 433. Accordingly, the Court will deny the motion on this basis.

b. **Sovereign Immunity**

Under Kentucky law, "[i]mmunity from suit is a sovereign right of the state." *Foley Constr. Co. v. Ward*, 375 S.W.2d 392, 393 (Ky. 1963). The Kentucky Constitution, however, provides that "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Ky. Const. § 231. As Kentucky's highest court has held, a

county "is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity." *Cullinan v. Jefferson Cty.*, 418 S.W.2d 407, 408 (Ky. 1967), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). While Louisville Metro is a consolidated local government rather than a county, Kentucky law provides that "[a] consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e). "Therefore, absent an explicit statutory waiver, [Louisville Metro] is entitled to sovereign immunity." *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. App. 2008).

In his response, Johnson has not addressed the applicability of sovereign immunity to bar his state law claims against Louisville Metro. Because Johnson has conceded this issue by failing to address it, the Court will dismiss the state law claims against Louisville Metro. *See Miller v. Reminger Co., L.P.A.*, No. 3:11-cr-315-CRS, 2012 WL 2050239, at *8 (W.D. Ky. June 6, 2012) ("As Defendants pointed out, by failing to contest these arguments, Plaintiffs conceded them." (citing *Lucas v. Chance*, 121 F. App'x 77, 79 n.2 (6th Cir. 2005))).

### B. Respondeat Superior

Johnson's second cause of action asserted against Louisville Metro is a "[s]upplementary [c]laim for [r]espondeat [s]uperior" and cites neither federal nor state law as being the authority for this claim. (Compl. ¶¶ 56-57). In Defendants' motion, they challenge Johnson's claim on federal grounds, and in his response, Johnson addresses the claim on state law grounds. (Defs.' Mot. Dismiss 18-19; Pl.'s Resp. Defs. Mot. Dismiss 10-11).

If this claim is based on federal law, the Supreme Court has held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be

6

held liable under § 1983 on a *respondeat superior* theory." *Rayburn v. Blue*, 154 F. Supp. 3d 523, 531 (W.D. Ky. 2015) (quoting *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, Johnson has failed to state a federal claim based upon respondeat superior against Louisville Metro.

If this claim is based on Kentucky law, this claim also fails. As previously noted, state law claims against Louisville Metro are barred by the doctrine of sovereign immunity. The Kentucky Supreme Court has specifically held that supervisory liability cannot be imposed due to sovereign immunity. *See Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003) ("If damages could be recovered against a county on the basis of *respondeat superior*, the concept of sovereign immunity would be largely nullified because state and county governments perform their ministerial functions by and through their agents, servants, and employees."). The Court will dismiss this claim.

    C.    **Federal Claims**

In the Complaint, Johnson purports to assert violations of Sections 1981 and 1983 against Louisville Metro and Conrad. (Compl. ¶¶ 51-57, 74-87). In their motion, they contend that the allegations are insufficient to survive Fed. R. Civ. P. 12(b)(6). (Defs.' Mot. Dismiss 8-12).

    1.    *Section 1981*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute defines the phrase "make and enforce contracts" broadly to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 1981(b).

The Sixth Circuit has previously held, however, that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units, [so] no independent cause of action against municipalities is created by § 1981(c)." *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Accordingly, Johnson has failed to state a Section 1981 claim against Louisville Metro, and this claim will be dismissed.

    2.    *Section 1983 -* **Monell** *Claim*

In the first count, Johnson alleges a claim against Louisville Metro pursuant to *Monell v. N.Y. Department of Social Services*. (Compl. ¶¶ 51-55). For a municipality to be liable for the actions of its employees under *Monell*, a causal link must connect the alleged constitutional deprivation to a policy or custom of the municipality. *See Deaton v. Montgomery Cty.*, 989 F.2d 885, 889 (6th Cir. 1993). "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). "The official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id*. at 479-80 (internal quotation marks omitted).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may show the existence of an illegal policy or custom by showing "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of

a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

To establish liability under this standard, the custom asserted must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. "In turn, the notion of 'law' must include '[d]eeply embedded traditional ways of carrying out state policy.'" *Doe v. Claiborne Cty.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (alteration in original) (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940)). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* at 508 (citation omitted).

In the Complaint, Johnson has plausibly alleged that the Louisville Metro has an illegal policy or custom of targeting African American motorists for pretextual traffic stops and searches of vehicles. (Compl. ¶¶ 47-52). The allegations also connect the policy or custom to the LMPD officers' conduct in targeting and stopping Johnson because of his race. *Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 312 (E.D.N.Y. 2005) ("Plaintiffs allege a specific policy of targeting African American and Hispanic males for traffic stops. The alleged *Monell* violation could not be more clear." (citation omitted)). Thus, Johnson has sufficiently alleged a *Monell* claim, and the motion will be denied on this basis.

          **3.**     *Section 1983 – Failure to Train Claim*

In addition to challenging the *Monell* claim, Johnson alleges Section 1983 claims of failure to train against Louisville Metro and Conrad. (Compl. ¶¶ 85-87). Louisville Metro and Conrad argue that those claims should also be dismissed. (Defs.' Mot. Dismiss 12-13).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

9

come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiffs may state a failure to train claim in two different ways. To show a generalized failure to train, a plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (citations omitted). Alternatively, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (citation omitted). This second, single incident claim applies "in a narrow range of circumstances" where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id*.

In the case *sub judice*, Johnson alleges that officers employed by the LMPD customarily engage in federal rights violations by targeting African American motorists for pretextual traffic stops and searches of vehicles. (Compl. ¶¶ 47-52). The LMPD officers conducting these pretextual traffic stops were allegedly not disciplined for violating motorists' civil rights, and supervisors purportedly did not properly investigate complaints filed against officers. (Compl. ¶¶ 52-53). Johnson has also referenced the series of articles published in the Louisville *Courier-Journal* newspaper describing that allegedly similar unconstitutional acts officers employed by the LMPD, which reflects that it was plausible that Louisville Metro and Conrad were on notice of the repeated and flagrant violations of constitutional rights. In addition, it can be reasonably inferred that Louisville Metro and Conrad ignored these violations of constitutional rights because they did not take action to address this conduct even after being put on notice. *See Fisher v. Harden*, 398

10

F.3d 837, 849 (6th Cir. 2005) ("Fisher must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." (citing *Stemler v. City of Florence*, 125 F.3d 856, 865 (6th Cir. 1997); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994)). Accordingly, Johnson has sufficiently stated a failure to train claim under Section 1983, and the motion will be denied as to this claim.

### 4. *Section 1983 – Request for Punitive Damages*

Louisville Metro argues that punitive damages are not recoverable against municipalities under Section 1983, to which Johnson has failed to respond. (Defs.' Mot. Dismiss 14). Regardless, the U.S. Supreme Court has held that punitive damages are not an available remedy against municipalities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). Accordingly, the Court will dismiss the request for punitive damages under Section 1983 against Louisville Metro.

### D. **State Claims**

Finally, Louisville Metro and Conrad seek dismissal of the state law claims asserted against them. (Defs.' Mot. Dismiss 6-8). The only remaining claims to address are negligent supervision and training, negligence, and NIED/IIED.

### 1. *Negligent Supervision and Training*

In the fifteenth count, Johnson alleges that Louisville Metro and Conrad were negligent in their supervision and training of LMPD officers. As discussed above, this claim against Louisville Metro would be barred by sovereign immunity.

As to Conrad, acts involving supervision and training have generally been held to be discretionary functions. *See Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480-81 (Ky. 2006); *Doe v.*

11

*Magoffin Cty. Fiscal Ct.*, 174 F. App'x 962, 973 (6th Cir. 2006); *Doe v. Univ. of Ky.*, 361 F. Supp. 3d 687, 702 (E.D. Ky. 2019) (citation omitted). However, "supervision of employees is considered a ministerial act when the supervisor is merely enforcing known policies." *New v. Louisville Metro Gov't*, No. 3:15-cv-653-DJH, 2016 WL 1268299, at *4 (W.D. Ky. Mar. 31, 2016) (citing *Finn v. Warren Cty.*, 768 F.3d 441, 449 (6th Cir. 2014)). While Conrad asserts that he is entitled to qualified immunity against this claim, the Court has already determined that there are factual issues precluding the dismissal of this claim at this stage of the litigation.

"Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill." *Yanero*, 65 S.W.3d at 528 (citations omitted). Accordingly, for "Conrad to be liable for any actions of his subordinates, he must have either employed persons he knew to be incompetent for their positions or he must have been somehow directly involved in the alleged negligent acts of his subordinates." *Juillert v. United States*, No. 3:16-cv-00276-TBR, 2016 WL 6156179, at *6 (W.D. Ky. Oct. 21, 2016).

As to this cause of action, Johnson specifically alleges:

> 151.   Defendants Chief and City were the employers responsible for training and/or supervising officers of Defendant Officers.
> 152.   As the employers, said Defendants have a duty to exercise reasonable care in the hiring, retention and supervision of individuals who, because of their employment, may pose a threat of injury to members of the public.
> 153.   Said Defendants breached their duty in the negligent and reckless supervision and training of Defendant Officers as it relates to the misconduct alleged herein this Complaint.
> 154.   Defendants Chief and City knew, or in the exercise of ordinary care should have known, of the incompetence, unfitness, and dangerous characteristics of Defendant Officers.
> 155.   The incompetence and unfitness of Defendant Officers was a cause of damage to Mr. Johnson.
> 156.   These Defendants' negligence was a proximate cause of Mr. Johnson's injuries.

(Compl. ¶¶ 151-56). Coupled with the other allegations in the Complaint of misconduct by officers employed by LMPD under Conrad's command, these allegations are enough for the Court to infer that Conrad could be liable to the extent that he may have implicitly authorized, approved, or knowingly acquiesced to the alleged unconstitutional actions taken by the officers. The motion will be denied on this basis.

### 2.     *Negligence Claim*

In addition to the more specific negligent supervision and training claim, Johnson asserts a more general claim entitled "Negligence-Ordinary and/or Gross Under Kentucky State Law" against Conrad. (Compl. ¶¶ 157-163). Notwithstanding that title, Johnson more specifically alleges negligent supervision, training, and hiring by Conrad. (Compl. ¶¶ 157-63). As discussed above, the Court has already determined that there are factual issues precluding the dismissal of this claim at this stage of the litigation based on qualified immunity, and the allegations are sufficient to state a claim for negligence. The motion will be denied as to this claim.

### 3.     *NIED/IIED*

In his response, Johnson does not address Louisville Metro and Conrad's contention that he has failed to sufficiently allege claims of NIED and IIED under Kentucky law, which is concession by Johnson that these claims should be dismissed. *See Miller*, 2012 WL 2050239, at *8 (citing *Lucas*, 121 F. App'x at 79 n.2). Nevertheless, based upon the Court's review of the allegations in the Complaint, Johnson has failed to sufficiently plead these causes of action against

these Defendants. The Court will dismiss the NIED and IIED claims against Louisville Metro and Conrad.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 4) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's federal claim under 42 U.S.C. § 1981 and request for punitive damages against Louisville-Jefferson County Metro Government are also **DISMISSED**. Plaintiff's state law claims against Defendant Louisville-Jefferson County Metro Government and the claim for negligent infliction of emotional distress and/or intentional infliction of emotional distress against Defendant Steve Conrad are also **DISMISSED**. Finally, Plaintiff's "supplementary claim for respondeat superior" is **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

October 30, 2020

cc:  counsel of record